UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**Roberto Pizzaro**

**V.** **C.A. No.05-113T**

**Ashbel T. Wall II, Et AL**

PLAINTIFF'S ANSWER TO DEFENDANT'S RESPONSE
ON THE 21st DAY OF OCTOBER 2005

**NOW COMES THE PLAINTIFF, Roberto Pizzaro,** and he responds to the Defendant's Response of October 21st, 2005. The reason for this response is to point out within this instant case, the facts, provided within the Defendant's response to the Plaintiff's Objection of 3 October 2005. The Plaintiff will, with permission of the Court, amend his case to provide facts, and case law in support of his Motion.

In the Memorandum provided by the Defendant in this instant case, dated 21 October 2005, the Defendant states ".....Although it is alleged that the search was fruitless, nevertheless Plaintiff was booked for possession of a drug known as Ecstacy....."

In the original complaint, the Plaintiff shows that on 05 March 2003, his cell was searched and nothing was found. The prison authorities did not have any reason to charge the Plaintiff with any offense of the Policies of the Dept. of Corrections.

On the 6th of March 2003, the Plaintiff was placed in punitive segregation without any reason or charge, (it is sometimes alluded to "under investigation", when there is no actual reason to be placed in segregation, in violation of Due Process Rights) the Plaintiff, or any other inmate, who is "under investigation", in actuallity, cannot go anywhere, and therefore, are imprisoned without just cause. On the 10th of March 2003, the Plaintiff was read a "booking" for Ecstacy Possession. Please note that this was done four (4) days After the Plaintiff was placed in punitive segregation. The D.O.C. Policy states that a "booking" for an infraction must be read to the accused within twenty four (24) hours after the charge, unless the inmate is "under investigation". First, the Plaintiff was never informed that he might be under investigation" by any member of the Maximum Security staff or the Investigators of the D.O.C., this is in violation of their own policies, and the Constitution.

The Plaintiff requests leave by this court to file Amended, and Supplemental Pleadings under Federal Rules of Civil Procedure, rule #15, (a),(b),(d), so that the true nature of the complaint can be understood by this court, and the Plaintiff who is very limited in the ways of the laws, and who is hampered by a language barrier, can express his contentions to the court in terms that will help adjudicate his case now before this court.

In Re: **EIGHTH AMENDMENT CLAIM;**

The defendant states that the "complaint was deviod of any allegation to even infer that any Defendant was deliberately indifferent to the Plaintiff's health and safety." Although it is an accepted fact, that upon committing a infraction against the rules of the Department of Corrections, an inmate may be brought to segregation as a punishment for this infraction, the Plaintiff contends that he did not commit any infraction against the rules or policies of the D.O.C., this is even alluded to by the counsel for the defendant. (see page 2 of defendant's response, dated 10/21/05, Memorandum section second line) The Plaintiff alleges that the D.O.C., and it's named employees were indifferent to suffering of the Plaintiff, in that the Plaintiff did not commit any infraction, and those with the power to investigate the facts of the infraction, ignored the Plaintiff's mental anguish and the stress that occurred from this alleged infraction. As a matter of law, " In ruling on a Motion to Dismiss for lack of subject matter jurisdiction, the pleadings are to be taken as true and construed in a light most favorable to the party opposing the Motion." (Brown V. State of R.I., 160 F.Supp.2d.233,(D.R.I. 2001), Ducally V. Dept. of Corrections, 160 F.Supp.2d. 220, (D.R.I. 2001)

The Plaintiff states that definite mental anguish occurred when he was unjustly and without provication, charged with an infraction that removed him from the general population, made him lose his visitation with his family, and took accrued goodtime, for something that he did not do. The defendant's attorney would have the court believe that the defendants have only the best intentions for the

Plaintiff, or any other inmate charged with a infraction of the policies of the D.O.C., but as I stated before, there is no recourse for an accused inmate to object to the treatment by the defendants, other than bringing suit against them in Federal Court. Relief cannot even be sought in state court, because of the tendencies of the State to favor the State. The Plaintiff's opinion of the state and it's court system, comes from the mis-trust of the attorneys, both prosecutors, and defenders, for their tendencies for conviction at any cost. The defendant's attorney cites the Magistrate Hagopian's Report and recommendation citing of Farmer V. Brennan, 825, 832, (P.3, Id. at 832), "..includes an obligation to 'ensure that inmates receive adequate food, clothing, shelter, and medical care. and to take reasonable measures' to provide for their saftey." The defendant's attorney also states that the "Plaintiff is required to show proof that certain unlawful conditions presented "a substantial risk of serious harm" and that the official has "a sufficiently culpable state of mind described as deliberate indifference to inmates health and saftey." as found in Giroux V. Somerset County, 178 F.3d. 28-31, (1st. Cir. 1999). The Plaintiff contends that the mere fact that the defendant and his subordinates, under the guise of "safety and security", are not above misleading this court and the general public. They would have you believe that the D.O.C. is a well run state entity, with no problems, no discrimination, only fair and just treatment of the inmates of that Department, when in fact, the D.O.C.'s treatment of it's prisoners in not humane in any aspect. The D.O.C. does not provide clothing, for the inmates, the inmates are required to purchase their clothing through the commisary. An inmate is required to pay for medical treat-

ment. Inmates receive from $.50 (fifty cents) to $3.00 (three dollars) per day for working in the facility, they are charged $3.00 (three dollars) for any visit to a staff doctor, $6.00 (six dollars) for a specialist visit. Any inmate that has money put into his/her account, run the risk of having all of that money taken out, all but $10.00 (ten dollars), because of an internal policy of the D.O.C., but I digress. The defendant's in this instant case have all of the faults of man, they are not above hatred, prejudice, anger, or any number of negative traits possessed by the human race. They regularly place inmates in segregation for imagined infractions, and the only way for someone falsely charged of an infraction, after exhaustion of the grievance procedure, is through the courts, and even there, an inmate is prejudiced for having committed a crime. Like people of the community, inmates are not all the same, and it is an unfair classification that inmates are tagged with, as being all the same. Such is the nature of this case now before this court. As overseers of the inmate population, there is no one that the Director or his minions, to whom they are directly responsible. They are subject to infrequent inspections by the state, and if and when these occur, they insure that the "house is clean", and they usually have a "heads up" notice well in advance of any possible trouble. In placing the Plaintiff in segregation, the Officers and the staff of the D.O.C. unduly punished the Plaintiff for an infraction that he did not commit. They ignored the limited due process, and liberty interest of the jail yard. They would not produce evidence when the Plaintiff requested it, they did not ascertain that the limited rights that the Plaintiff possessed were not violated.

As a matter of fact, when the Plaintiff was put in punitive segregation, nothing was done to ascertain if the Plaintiff had any suicidal tendencies. He like many other inmates are routinely placed within the confines of segregation, without the benefit of a mental checkup. At the time of the Plaintiff's seizure in the rear hall, he had no knowledge of wrong doing on his behalf, and when they seized him, this caused a tremendous amount of mental anguish by the imposition of this punitive measure. I know that mental anguish is not discernible to the sight, but nevertheless, it is sufficient to injure some people's thought processes. Just because something is not tangible, that doesn't mean it doesn't exist. Many mental health diagnoses are not discernible on the outside, and most psychologists have to "get inside" a person's head to see what they are thinking, in order to help them with any Problems that they might possess. The Plaintiff avers that he has suffered mental anguish from his imprisonment in punitive segregation. Prior to his placement in segregation, the Plaintiff had, and still has the fear of closed in spaces. Not true claustrophobia, but claustrophobia nevertheless. It is difficult enough for the Plaintiff with his placement within a cell in general population, but the removal of him from that cell to one that is punitive in nature, one that a person, who is used to the freedom at the movements, to one that he cannot leave until the punishment is served. And all because of some vendetta brought on by the Officers and the staff of the D.O.C. Within this action by the D.O.C., the perpetrators of this injustice, did nothing to help with the Plaintiff's health or safety. They were deliberately indifferent to the Plaintiff's state of mind, his health and his safety, or else they would have known about the Plaintiff's problem with enclosed spaces.

In Re: **FOURTEENTH AMENDMENT CLAIM**

It should be quite apparent to this court and any observer of this action, that the Plaintiff's burden of proof, for "atypical and significant" relationship to the violation of this right has been met. It is not "typical" to be placed in segregation, especially when the person placed there has not committed an infraction. It is "typical" for the D.O.C. to ignore the complaints of an inmate, it is also "typical" for the D.O.C. to make the rules as they go along, so this, in effect, causes consternation on all of those incarcerated, to not know or understand just what the rules are. The Plaintiff's placement in punitive segregation was significant in the fact that the Plaintiff suffered from "panic attacks" for a infraction that he did not commit. He could not even request help from a psychologist, because there is only one to take care of all of the facilities. Although there is a Physician's assistant who prescribes medication, there is no real "mental health" treatment offered by the D.O.C. They (D.O.C.) just prescribe pills, and most of the time, the pills are a placebo to placate the inmates. The "liberty interest" resides in the fact that no infraction was committed, and therefore no placement in segregation was warranted. Another fact is that when queried about the drug Ecstacy, and after requesting to be shown the evidence, in violation of their own policies, the D.O.C. would not produce the evidence. Is not that in violation of due process? Should not the accused be entitled to review the evidence against them? Is the D.O.C. that far above us mere mortals that they can violate our rights with impunity? I think not.

In Re: **LOSS OF GOODTIME CREDIT**

The defendant's attorney states that loss of accrued goodtime involves the Plaintiff's length of confinement, when in fact, the Plaintiff is sentenced to a "term" sentence, and goodtime is earned, not given, for obeying the rules of the institution. Goodtime is only lost, if an inmate violates some rule, and then they are "multiply punished", by losing accrued goodtime for the amount of days spent in punitive segregation, segregation itself, and loss of goodtime for the month that the infraction occurred. Now the Plaintiff contends and avers that he was not in possession of any substance contrary to the rules of the institution, or the laws of this state, and that he has been falsely accused of an infraction that never happened. The defendant's attorney cites Justice Hagopian's citation of Wilkinson V. Dotson, 125 S.Ct. 1242, (2005), the Plaintiff has read this case, and what is being overlooked is that "..so understood, is consistent with other Supreme Court cases permitting prisoners to bring §1983 challenges to prison administrative decisions." (Bryer, J. joined by Rehnquist, Ch. J., and Stevens, O'Conner, Scalia, Souter, Thomas, and Ginsburg, J.J.) Wilkinson V. Dotson, 125 S.Ct.1242, (2005), cites from U.S. Lexus 2204. The Plaintiff understands that the challenge for the lost goodtime must be sought under Federal Habeas Corpus, "....but the inmates could use §1983 to obtain a declaration ("as a predicate to") their requested damages award that the disciplinary procedures were invalid" Ibid they could also seek "by way of ancillary relief [,] an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations. Ibid, (emphasis added) in neither

case would victory for the prisoners would have meant immediate release or a shorter period of incarceration..." The Plaintiff is not attacking the loss of goodtime, per-se, he is pointing out that, because of this loss of this goodtime, the way it was lost, and the violation of the Plaintiff's rights by the defendant and his minions, that this has caused this instant action by the Plaintiff to seek punitive damages from the defendants. The Plaintiff is seeking adjudication of the requested damages against the defendants because of their violation of of the Plaintiff's constitutional rights, their careless indifference to the Plaintiff's suffering, and their haphazard way of treating the "class" of people who have the misfortune to be called inmates.

**WHEREFORE,** THE Plaintiff cites the following case law in support of the Plaintiff's Objection to the Courts Motion to Dismiss.

".. In ruling on a Motion to Dismiss, the Court construes the complaint in the light most favorable to the Plaintiff, taking all well pleaded allegations to be true, and giving the Palintiff the benefit of all reasonable inferences." (Schock V. U.S. 21 F.Sup.2d. 115)

The Plaintiff Thanks this Court , and awaits its decision.

Roberto L Pizzarro

I Hereby certify that on the 2nd day of November 2005, I caused a true copy of the Answer to the Defendant's Response dated 21 October 2005, to be sent to Michael Grant Esq. Attorney for the Defendants in case #05-113T, at 40 Howard Avenue, Admin "A" Building, Cranston, R.I. 02920.

Roberto Pizzaro, Pro-se